UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARLENE SMITH, | ) | 1:04cv6600 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) ) | |

**BACKGROUND**

Plaintiff Darlene Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 28, 2005, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for supplemental security income on August 15, 2000, alleging disability since December 31, 1999, due to "a bad heart, high blood pressure, severe depression, headaches, tired, and arthritis in left leg." AR 139-151, 143. After Plaintiff's application was denied initially, on reconsideration and following a hearing, the Appeals Council remanded the case for further proceedings. AR 381-384.

ALJ Richard C. Goodwin held a second hearing on August 21, 2003, and issued a decision denying benefits on October 2, 2003. AR 81-105, 17-25. The Appeals Council denied review on October 19, 2004. AR 7-10.

Hearing Testimony

ALJ Goodwin held a hearing on August 21, 2003, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudin. AR 81. Vocational expert ("VE") Thomas C. Dachelet also appeared and testified. AR 81.

Plaintiff testified that she was born in 1958 and completed the 10th grade. AR 84. She lives with her sister and hasn't worked since 1999. AR 84. She explained that she cannot work because of a bleeding ulcer, high blood pressure and the medication she takes for hepatitis C. AR 85.

Plaintiff also explained that she hears things and takes medication for hallucinations. She had a prior drug and alcohol problem, but hasn't done drugs since 1999 and hasn't had alcohol since 2001. AR 86-87. She testified that she smells a "stinky odor" and thinks people are talking to her. She hears people talking to her about five days out of the week. AR 88. To get away, she goes into the closet and stays there until the next morning. This happens about four times a week. AR 89. The medication for her hallucinations works and helps her sleep well, but makes her feel like something is crawling on her. AR 89. It also makes her dizzy. AR 95.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff indicated that her ability to concentrate is not good and that she can start something but can't complete it. AR 92-93. She wakes up tired and is tired after taking her medications. AR 93.

She receives injections for her hepatitis C, and has received two so far. AR 93-94. She is tired, sore and just can't function. AR 94.

She watches her diet because of her bleeding ulcer, but it has not improved. She has pain in her stomach every day and takes Vicodin for relief. AR 96. The Vicodin makes her fall asleep and doesn't last as long as it should. AR 97.

Plaintiff's niece cooks for her and takes her to the grocery store. Her niece also cleans the house. AR 98. Plaintiff does not drive because her medicine makes her "blurry eyed" and dizzy. AR 98-99. On a typical day, Plaintiff sits in her room with the radio on and talks to her niece when she visits. AR 99. Plaintiff prefers to be by herself. AR 99.

For the only hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work background. This person could lift and carry 20 pounds occasionally and 10 pounds frequently. This person can stand and walk for two to four hours in an eight hour day, and can sit for less than six hours. This person has postural limitations in climbing, stooping, kneeling, pushing, balancing, crouching, crawling, pulling and reaching. This person has difficulties in following instructions and dealing with the public will cause anxiety. The VE testified that this person could not perform any work. AR 103.

Medical Record[3]

An abdominal x-ray in March 2000 showed mild ileus. AR 191.

On September 29, 2000, Plaintiff saw Chinnapa R. Nareddy, M.D., for a consultive examination. He diagnosed fairly controlled hypertension, abdominal pain, presently better, etiology unknown, chronic generalized headaches, fairly stable, and occasional chest pain and shortness of breath, possibly attributable to chronic smoking. There were no objective findings to support a restriction of physical activities. AR 221-225.

---

[3] The medical record is briefly summarized as Plaintiff's issue does not involve the ALJ's evaluation of the medical evidence.

On October 21, 2000, Ekram Michiel, M.D, performed a psychiatric evaluation. Dr. Michiel diagnosed Plaintiff with dysthymic disorder, with a GAF of 55-60. He opined that Plaintiff could maintain adequate attention and concentration to carry out one or two step simple job instructions. She could relate and interact appropriately with coworkers, supervisors and the general public. She could not carry out an extensive variety of technical and/or complex instructions. AR 228-231.

On November 3, 2000, State Agency physician Archimedes Garcia, M.D., opined that Plaintiff could perform simple work activity, relate to others and adapt to routine work. AR 250.

In June 2001, Plaintiff applied for 72-hour detention for evaluation and treatment for suicidal ideation and depression. She was diagnosed with recurrent major depressive disorder and alcohol abuse in early full remission, with a GAF of 40. She did not meet the criteria for detention and chose to go home. By August 2001, Plaintiff denied suicidal thoughts and her GAF was 55. She was prescribed medication and began to feel well. AR 294-340.

In September 2001, Plaintiff underwent an esophagogastroduodenoscopy and was diagnosed with hiatus hernia and mild esophagitis with superficial duodenal ulceration and gastritis. AR 343. She has been maintained on medications. AR 341-342.

In May 2002, Dr. Curry, Plaintiff's treating physician, opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for two to four hours and could sit for less than six hours. AR 395. She had postural limitations in climbing, balancing, reaching, stooping, crouching, crawling, pushing and pulling. AR 396. She had anxiety in dealing with supervisors, coworkers, and the public. AR 397.

In March 2003, Plaintiff returned to the mental health clinic and requested treatment. AR406. Prior to this, she was last seen in April 2002. AR 407.

Plaintiff tested positive for hepatitis C in April 2003. AR 415.

ALJ's Finding

The ALJ determined that Plaintiff had the severe impairments of a hiatus hernia, major depressive disorder and panic disorder. AR 21. He further determined that Plaintiff's allegations were not entirely credible. AR 22. Plaintiff had the residual functional capacity ("RFC") to lift

1  and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk for two to hour
2  hours and sit for less than six hours.  She was restricted in climbing, stooping, kneeling, pushing,
3  balancing, crouching, crawling, pulling, and reaching.  Plaintiff could maintain adequate
4  attention and concentration, carry out one or two step simple job instructions, and relate and
5  interact appropriately with co-workers, supervisors and the general public.  AR 23.
6     Although the VE testified that based on Plaintiff's RFC, there were no jobs available in
7  the national economy, the ALJ applied Medical-Vocational Rule 201.18 to find Plaintiff not
8  disabled.  AR 23.

## SCOPE OF REVIEW

10     Congress has provided a limited scope of judicial review of the Commissioner's decision
11  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
12  the Court must determine whether the decision of the Commissioner is supported by substantial
13  evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla,"
14  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
15  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
16  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
17  401.  The record as a whole must be considered, weighing both the evidence that supports and
18  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
19  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
20  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
21  This Court must uphold the Commissioner's determination that the claimant is not disabled if the
22  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
23  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
24  Cir. 1987).

## REVIEW

26     In order to qualify for benefits, a claimant must establish that he is unable to engage in
27  substantial gainful activity due to a medically determinable physical or mental impairment which
28  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

5

U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (hiatus hernia, major depressive disorder and panic disorder); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform jobs that exist in significant numbers in the national economy. AR 24.

## DISCUSSION

Plaintiff argues that given the ALJ's RFC finding, he erred by using Rule 201.18 as a framework to find her not disabled. Specifically, Plaintiff contends that her ability to sit for less than six hours, her limitation to carrying out one or two simple job instructions, and her postural limitations require the testimony of a vocational expert.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1  grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs
2  existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of*
3  *Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether
4  a non-exertional limitation significantly limits the range of work the claimant is able to perform
5  is left to the ALJ. *Id.*

6  During the hearing, the ALJ asked the VE one hypothetical that reflected his RFC
7  findings. The VE testified that a person with these restrictions could not perform any jobs. AR
8  103. In his decision, the ALJ set forth the VE's opinion, but explained that despite his testimony,
9  SSR 83-5a provides that the Grids are conclusive. AR 23. He concluded, "[t]herefore, a finding
10 of 'not disabled' may be reached within the framework of Medical-Vocational Rule 201.18,
11 based upon the claimant's vocational factors." AR 23.

12 The question, therefore, is whether the ALJ could rely solely on the Grids given
13 Plaintiff's RFC. This is especially critical where, as here, the VE testified that an individual with
14 Plaintiff's RFC could not perform any jobs and would therefore be disabled. Unfortunately, the
15 ALJ's rationale for his decision to apply the Grids is not entirely clear. While he states that he
16 uses the Grids as a framework, he cites a rule that explains that the Grids direct a finding only
17 where the claimant's vocational factors and RFC coincide with the criteria of a particular rule.
18 SSR 83-5a. Nor does the ALJ explicitly find that Plaintiff's nonexertional impairments do not
19 significantly erode the occupational base, an explanation that is generally included in a case such
20 as this. *Desrosiers,* 846 F.2d at 577. Instead, the ALJ simply finds that Plaintiff's RFC allows
21 her to perform a broad range of sedentary work.

22 Plaintiff first argues that her ability to sit for less than six hours precludes her from
23 performing a full range of sedentary work, and that this exclusion may constitute a significant
24 erosion of the occupational base.[5] The exertional demands of sedentary work include the ability
25 to sit for "approximately 6 hours of an 8-hour workday." SSR 83-10. Plaintiff's RFC to sit for

---

[5] In opposition, Defendant argues that Plaintiff's RFC made her capable of both light and sedentary work. However, the ALJ specifically found that Plaintiff could perform sedentary work and the Court will therefore proceed on this basis.

1  "less than six hours" is problematic.  The RFC is vague because it does not quantify how long
2  Plaintiff *can* sit.  Indeed, the ability to sit for one hour versus the ability to sit for five and one-
3  half hours would result in very different vocational outcomes, yet both come within the
4  parameters of the ALJ's RFC finding.  Similarly, without knowing Plaintiff's exact abilities, it is
5  difficult to comprehend how the ALJ concluded that Plaintiff could perform a broad range of
6  sedentary work.  It may be that the ALJ applied assumptions that were not apparent in the
7  decision, but without such information, the Court cannot validate the result.

8  Plaintiff next contends that her limitation to one or two step simple job instructions is a
9  nonexertional mental impairment that precludes application of the Grids.  Again, while such a
10 limitation may or may not impact the available positions, the ALJ fails to discuss the
11 implications and without such a discussion, the Court cannot validate the result.

12 Finally, Plaintiff argues that her restriction in climbing, stooping, kneeling, pushing,
13 balancing, crouching, crawling, pulling and reaching precluded application of the Grids.  The
14 Court agrees.  While postural restrictions may or may not significantly erode the occupational
15 base, it is impossible to make such a determination without a more exact description of the
16 limitations.  For example, as Plaintiff points out, an impact on the ability to stoop may affect the
17 positions available, but without knowing the exact nature of the limitation, it is impossible to
18 determine such an effect, if any.  SSR 96-9p.

## REMAND

20 Accordingly, the Court finds that the ALJ erred by rejecting the testimony of the VE and
21 instead relying on the Grids.

22 Section 405(g) of Title 42 of the United States Code provides: "the court shall have the
23 power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,
24 or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."
25 In social security cases, the decision to remand to the Commissioner for further proceedings or
26 simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d
27 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original
28 administrative proceedings, a social security case should be remanded.  Where, however, a

1 rehearing would simply delay receipt of benefits, reversal and an award of benefits is
2 appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859
3 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no
4 useful purpose would be served by further administrative proceedings, or where the record has
5 been thoroughly developed.").

6 Here, no useful purpose would be served by remanding the action for further proceedings.
7 The Court determined that the ALJ incorrectly applied the Grids and should have relied on VE
8 testimony. According to the VE, a person with Plaintiff's RFC could not perform any jobs in the
9 national economy. AR 103. The action is therefore REMANDED for the PAYMENT OF
10 BENEFITS.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED for PAYMENT OF BENEFITS to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Darlene Smith and against Defendant Jo Anne B. Barnhart, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   November 4, 2005                    /s/ Dennis L. Beck
3b142a                                      UNITED STATES MAGISTRATE JUDGE